Yes, Your Honors, I'll reserve three minutes for rebuttal. Dr. Clark. May it please the Court, I represent the plaintiff, appellant in this matter, Rolando Lezama. And the reason I brought this to appeal is the continued propensity of district court judges to grant summary judgments on an action like this. There's clearly issues of fact here. Going through some of the arguments, I mean, the first argument with respect to an issue of fact is when Clark County initially terminated Mr. Lezama. And clearly, there's one thing that the Supreme Court recently brought out in Tolan v. Cotton is you're supposed to be crediting the evidence for the non-moving court. That's certainly true. But with respect to the first termination, do you contest that your client made out a prima facie case for disability with respect to the first one, where the doctor said he had nothing wrong with him? On what basis did you make out a prima facie case for disability in connection with the first termination? Okay, so the prima facie case is disability is a physical or mental impairment that's substantial. I agree. And what did he allege that he had wrong? He had a doctor, his doctor, that said there was nothing wrong with him. Yeah, but clearly that was a mistake. I mean, at that point, he had been on medical leave, unable to do the job for a year. I mean, it's crazy for the district judge and the defendant to try to make an argument that just because a doctor mistakenly said he was not disabled, that he's somehow not disabled. I mean, I cited 29 C.F.R. 1630.2, and that clearly says you don't even need medical evidence. No, you don't, but if you put it in, is the county not entitled to rely on that? Now, what they did, if I recall correctly, when the doctor acknowledged he was incorrect, they immediately brought him back in. I mean, they can do whatever they want, but here's a county that is medically separating the individual. And then on the other hand, they're saying, oh, by the way, we're going to rely on this doctor's report that from their observations and the fact that they're medically separating the individual, they should have clearly said, hey, there's something wrong with this medical report. They didn't do that. And again, the district court just agrees with it. So your argument is that they relied in bad faith on this note, that they knew the note was false. Yeah, bad faith, whatever you want to call it. But it clearly, the individual was clearly disabled, and they just, from the whole factual scenario, they wanted to find a way to terminate Ms. Dulazama, and they did it. Excuse me. I was going to say, if that was the only medical report in the file, or the most recent one, the employer could count on that one, right? They could have what? It could have counted on that in discharging him, if that's the only thing they had. Well, but they, again, they knew that, I mean, they're the ones that medically separated him for this disability. So for them to, to me, to say, oh, well, we have this medical report that says he's not disabled, I mean, again, on summary judgment, you're supposed to credit the non-moving party's facts, and that's, in my opinion, you know, a monumental fact that, hey, you're medically separating the person. You wouldn't be doing that if the person was able to do their job. With respect, counsel, if I understand the facts correctly, yes, he did have a previous problem. But at some point, sometimes people's problems get resolved. And in this case, looking at the prima facie case, the county got something from this doctor, his doctor, that said he's fine. So why would the county not, based on those circumstances, be entitled to say, okay, whatever it was, it's all taken care of. Now, as soon as they found out there was a mistake, they immediately brought him back. Well, let me ask you this. Then why, if that's the case, why are they medically separating him in the first place? If they, at that point, if you're trying to say, well, they have a medical opinion, he's not disabled, why don't they say at that point, okay, you're not medically separate. I take your point, counsel. But let's pick some illness, whatever it is. Your client has X, and the county treats it that way. And then they get to a point, the doctor says, X is gone. I mean, you know, there's nothing wrong anymore. Aren't they entitled to rely on that? Well, again, but, again, we're looking at this in the context of summary judgment. Again, what I can tell you. I get that. So they're able to say that, but, again, when we look at it in summary judgment context, you need to credit or the court needs to credit the evidence that shows that he wasn't disabled. I mean, that he was disabled. I mean, they can't just selectively look at one side of the case, which is what was done here. Maybe we should go on to a different aspect of this. Let me just ask on that, just while we're still on the first termination. What's the effect of the settlement agreement when they did bring him back in and they had some kind of settlement agreement where he got some sort of benefit on the viability of your claim? Yeah, well, I mean, the settlement agreement, the argument there is that the county was acting in bad faith. I actually cited a case that was actually heard in this court where they did the exact same thing, and in that case the client did sign the agreement, and then I brought that up on appeal, and their argument was he waived all his rights because the settlement basically waived all the rights. So here I told the client absolutely not, do not sign that settlement. So when he refused to sign the settlement, then the county went ahead to reinstate the termination initially, and then I think they saw what they were getting into, and then they ultimately reopened the termination, they rescinded the termination, and then finally did go through the process of trying to accommodate him with an alternative job, which our argument is there's good evidence here that even with that they didn't really, they were just going through the motions. Well, let's just go to that second job. I think they call it the airport escort. Yeah, airport escort. If I understand your argument correctly, you're basically saying that a reasonable accommodation in that setting would have been, in effect, to put what would normally be an important part of the job on somebody else and your client. I think they had to be able to lift a certain number of pounds that was more than your client should be able to do, but that was an important part of the job. So I gather you're saying that in order to be a reasonable accommodation with respect to this other job, in effect he couldn't do it, but they would say he was going to do it. Is that correct? Well, with respect to that, I mean, the thing you get in these accommodation cases is the employer setting the parameters on, you know, what the essential functions of the job was and whatnot, and I think there's good evidence. Again, if you credit my client's evidence, he was on the job for many years, and he observed these airport escorts, and in his observations he saw that, yes, they had some lifting, but again, the ADA makes clear that you're supposed to, if it's a non-essential function, you're supposed to accommodate that non-essential function. My understanding, this is a county we're talking about. Correct. Counties have certain rules. They're really hidebound. They're civil service, in effect. They describe these jobs. It's all written out what's required. So you're saying that based upon your client's personal observations over the years, you can ignore what the official description of the job is and say, well, yeah, it says they have to be able to lift 65 pounds, but my observation is all they do is sit around and smoke marijuana and talk about bars. Is that controlling in a summary judgment motion? Well, my response to that would be, again, in a summary judgment context, you're supposed to credit the opposing evidence, and in my estimation, yes, a reasonable fact finder could come to the conclusion in support of my client's position in that context. So whatever your client said, however unbacked it was, except for his personal anecdotal evidence, controls for purposes of summary judgment. Well, I'm not saying it necessarily controls, but they classify it as his speculation. This is not just speculation. He observed over a number of years what this position did, and so I think it's, you know. It sounds to me like, given your understanding of summary judgment, there would never be a summary judgment, because all someone would have to say on the opposite side is, even though they had no other evidence, you know, in my experience, I've seen that people do X and Y. No, that's not the case at all. But, I mean, all you have to do is look at statistics in the federal court on the amounts of summary judgments that are granted. I think in Nevada it's like 70% of the cases or whatnot. So, you know. The law has changed. When I got out of law school in the ice age, almost nobody got summary judgments in state or federal court. They were always overturned. Now it's completely flipped. Yeah, now it's completely flipped. But that's the law now. That's the way the Supreme Court interprets it. Yeah. But, I mean, also on this last trying to find him another job, even assuming that the airport escort was not a job that he could do with his disability, they made no more than a cursory search of jobs. But I thought your client agreed that that was the only job that was available in the time framework that was available. That's the only job he could find. They didn't find anything. Well, he found that job, and it turned out he didn't qualify for that job without a reasonable accommodation, which was basically to have somebody else do the job. Right? Yeah. But, I mean, with respect to this accommodation looking for another job, I've had almost no cases where the employer actually found an alternative job. Justice Gorsuch, which he's now on the Supreme Court, when he was on the Tenth Circuit, he wrote an opinion. It was Quang versus Kansas State University, where he says, and this is in pertinent part, reasonable accommodations are all about enabling employees to work, not to not work. I mean, that's what we're trying to do here, try to keep the individual working. And what was done was just the opposite, just the complete opposite. They were doing everything they could to have them not work and ultimately be able to terminate them. Was it the burden on your client to show some job he could do, and then he came up with this escort and that's all? Or were you supposed to pull out some jobs that might come open next year or something like that? Yeah. I mean, well, part of our argument is there's a case in this circuit, Dark, where the court held that even after the person was terminated, they were supposed to look for jobs that could have come available. So that's part of our argument here. They meaning the employer? What? They meaning the employer? Correct, yes. All right. Counsel, you want to save your remaining time? Yeah, I'll save the remaining time. Thank you. Thank you. Good morning, Judge Wardlaw, Judge Smith, Judge Seiler. If it pleases the Court, my name is Whitney Seller. I represent Clark County, Nevada, and the Clark County Department of Aviation, also known as the McCarran International Airport. I'm prepared to go through each of these claims chronologically and in detail to explain why the district court's grant of summary judgment was correct. But if there's some specific area you'd like me to get to. I certainly have one. I was shocked by the district court's award of $111,331.50 in attorney fees. On what basis do you justify that? In this case, Your Honor, the plaintiff brought a state law claim. Right. It was his choice. It was his litigation choice. That was a tactical decision on his point, on his part. That choice comes with some consequences. And in this case, it was the fact that my use of Nevada Civil Procedure Rule 68 on the formal offer of judgment allowed me to offer to let judgment be taken against my client. And if I ultimately prevailed, unlike federal law, as a prevailing defendant, I could recover costs and fees. Now, it's one of the very few procedural tools that a client like mine has to protect itself from litigation like this, which I think Your Honor correctly observed is contrary to how Mr. Balaban phrased it. He phrases his case's appeal as a crusade to stop district courts from imposing summary judgment. I think it's just the opposite. It's an exploration of the lower limits of what's required to sustain a case. We face these all the time. Let's get into at least what I understand your argument was, which was that even though virtually all the work on this was done under the ADA, you said that the state law case was inextricably intertwined with the ADA case. Is that correct? Correct. Okay, so that's the case. And, of course, under the ADA you would get nothing. How do we disentangle this? I don't think you can. It's just one of those unique cases where the plaintiff's choice to bring and maintain a state law claim that was ultimately meritless but intertwined it and conflated it to such a degree with all of his other claims that I have to spend all the time and energy and effort to try and unwind that, unwind those two things, explain them to the court, distinguish and differentiate those so that I can explain why judgment as a matter of law was required in each and every case. Wait a second, counsel. We went back and looked at your summary judgment on the state law claims, and in that you spent two pages on the state law claim. And your only argument was lack of causation based on lack of temporal proximity, period. All the rest, all the summary judgment, all the rest of the work has to do with the wrongful terminations and the violation of the interactive process under the ADA. Why is that not just easily separable, and how are those so inextricably intertwined? We should accept that argument. I would point out one thing, and that is that the fact of the matter that the summary judgment argument addressed that claim in that fashion is not the same as saying that's how much time was spent in litigation between analyzing and investigating and trying to understand and articulate that argument. That being one thing, I would also concede, though, frankly, that certainly a lot of the time was spent in isolation on one claim or another. It's not my argument that I spent all of my time on the workers' comp claim. It's just a fact that it was intertwined with the other, and so there's no way to easily differentiate. What was the total bill for both the state and the ADA claims? The entirety of the claim was $116,000 from the date of the offer. $5,000 roughly of the total was spent on the ADA and everything else on this, as my colleague points out, this very minor state law claim? That wasn't my argument. My argument was that it's almost impossible to differentiate the time spent on one from time spent on the other. But, counsel, you're obviously a very smart lawyer. I'm sure you do a great job for your client. But it just, like my colleague, it seemed to me that the state law claim was just kind of a little puff thing. There was virtually nothing to it. It took very little to defend it. It was based on causation. Virtually everything was spent on the ADA claim. Is that fair? I would say that my greatest attention was to the ADA claim, for sure. Okay, so what are we talking about, three-quarters of it? Half. Half? Half. Okay, so if it was half and the total bill was $116,000 at the very least, wouldn't half of that amount be attributable to the ADA and, therefore, not recoverable as attorney fees based on your analysis? I mean, I assume you would have to go back and look at the MR at the. . . Let's just argue end. Let's take your half. Isn't that correct? Certainly the district court had discretion in exercising its discretion once properly applying the MRO case and the Beatty factors that are required in Nevada law to decide what was reasonable and appropriate under that case. And that's the standard of review for that award is whether it was an abuse. If the court, and I could understand, took the view that the district court should have made a more rigorous analysis and to differentiate those two claims, I can understand that and agree with that. And, frankly, as I mentioned in the brief, that attorney's fee award was never something my client was counting on. It wasn't recouping. It was just simply something we tried to use to avoid the cost, fees, time, and emotional capital required to litigate and defend yourself against claims like this. And in this case, it worked out to our advantage. And certainly we tried to use that to end the litigation before this appeal as well, which is, you know, right or wrong, it's a tool and it's there. And it's one that I use on behalf of my client when I can because why wouldn't I? And this is based upon the state law rule. You acknowledge, of course, that there's no ADA right to get attorney fees. I do acknowledge that. Okay. When you say claims like these, I mean there's no question that Mr. Lozama was injured, filed for workman's comp, was medically terminated. Your employer tried to engage in the interactive. Are you suggesting that it's a frivolous claim? I think it is as close to frivolous as you can get with a claim like this. The claims included also not just this worker's comp retaliation claim, which was the basis of the fee award against him, but also race, national origin discrimination claim, which he also abandoned at the summary judgment stage, both of which he described as throw-in claims, throw-away claims. I don't know that that characterization shocks the court as much as the fee award that came down. But I can tell you that from the defendant's standpoint, you don't have the luxury of disregarding that claim as just some kind of throw-away claim. I had to investigate and analyze and understand the facts related to those before I could move for summary judgment on them. They were, you know, if that's not frivolous, I don't know what is. If you want to get to the merits of the ADA claim itself and both of the terminations, I think when you analyze them as they stand, there's almost no merit to them at all. It's absolutely clear that this individual was injured at work, or at least he claimed to be. Nobody witnessed that. The state or the employer facilitated his workers' comp claim anyway. It was approved, apparently. He was extended light-duty status until it was exhausted. He went on unpaid medical leave after that because that's a standard policy in practice. At the end of a year, they don't know what his status is or why he's not back to work. They're the ones who initiated the interactive process and invited him to apply for an accommodation under the ADA. When his own doctor submitted paperwork that said he did not have a physical disorder requiring an accommodation, it was the county, through its Office of Diversity, that contacted him directly to explain that deficiency and to afford him an opportunity to supplement, which he declined to do. He mentioned during that conversation with the director of the Office of Diversity that he had a lawyer. The very next day, the Office of Diversity summarized that conversation and what they told him about the deficiencies in his application in a letter. Presumably, Mr. Lozama shared that with his lawyer, but neither he nor his lawyer in the next six weeks bothered to say that was a mistake or we'd like an opportunity to submit something different or anything. Crickets. So six weeks later, they moved to terminate him, and there's nothing wrong with that. They had engaged the interactive process. There's no evidence of disability at that point or a reasonable accommodation. So the first termination in and of itself, I think, there was just no facts to support it, yet it didn't stop him from bringing the claim. The argument with respect to the grievance being bad faith is just an extension of the first termination, but I think it's a red herring of immense magnitude. It's a case where he filed a grievance through his union. The grievance, when you look at it, only said the basis for the grievance was that he'd been medically separated without notice. That's obviously wrong. He had six weeks plus to know that they were going to do that if he didn't get his ADA paperwork in. So the basis of the grievance itself was defective. The only relief he sought in the grievance was an opportunity to apply for early retirement benefits through the state. So that's all that was at issue. Nobody ever mentioned or declared that he had an ADA claim or even thought about it, not to mention the fact that the settlement agreement that was proposed and only that proposed was negotiated between the county and his bargaining unit representative, the SEIU. So the fact that it included a general release of claims in and of itself, I don't think, can support any type of inference of bad faith. No reasonable juror could conclude otherwise. I think the district court was absolutely correct to move right past that, and I don't think it would be any basis to send the case back to a jury on that basis, which then just brings us to the second termination. And once he submitted information well after the fact that his doctor was saying, I made a mistake before, the county immediately reinstated him. Back to the date of his separation, specifically to reopen the interactive process under the ADA, which they did, commissioning a functional capacity evaluation to fully understand his limitations, engaging him directly to update his knowledge, skills, and abilities to see what he could and couldn't do. The FCE came back and said, you can't perform the essential functions with or without an accommodation. That fact disqualifies him from that job. As a matter of law, he does not contest or dispute that. So the only obligation left on the employer at that point is to see if there's a reassignment position. The law only requires, well, the statute doesn't say anything about how long you're supposed to look for that. You look at the EEOC's guidance on that and go to the DART position or DART case, and it indicates that the county should look for a reassignment position for a reasonable period, but it doesn't dictate exactly what that period is. And that's what happened here. We looked for 30 days. Was any other job found besides this escort job? There were other jobs available that the county reviewed because all of that's public information. And as part of the interactive process, they told Mr. Lozama specifically where those jobs would be posted so he could look and make his own determination himself. The county looked at those jobs, they analyzed those jobs, and they concluded that he did not qualify for any of those jobs that were open and available at that point in time because of his physical limitations. When Mr. Lozama identified the one job that the county had seen and considered that he wasn't qualified for, they looked at that, thought the same thing, but they forwarded it to the Office of Diversity anyway for a full evaluation of that claim or of that job relative to his functional capacity evaluation. And the evidence is undisputed that that was a pretty exhaustive analysis. Terry McCarthy from the Office of Diversity not only looked at the functional capacity evaluation compared to the job description, but also the functional analysis, job analysis itself, and called the department and spoke to the person who runs all those airport escorts to confirm just how often and to what extent the physical requirements actually existed, the essential functions of that job. He confirmed, included not just the lifting in addition or in excess of 35 pounds, but also sitting for extended periods of time or standing for extended periods of time. It's just the nature of that job. It's a flexible job that has these big requirements. So it's not like that was something that was just glossed over. The county went in detail to look. I'm sure I know what your answer is, but would you address your opponent's perspective that his client said, well, I've observed these airport escorts for years and what the job description says is not what they actually do and I can fulfill as part of a reasonable accommodation what they actually do. What's your response to that? I mean, I just don't believe that that is evidence from which a reasonable juror could conclude that that is a fact, that that is true, that they could find and impose liability based on an anecdotal observation of that nature from someone who should have been working in a different capacity during his workday, not taking some kind of, I don't know what he was doing. When I asked him during his deposition about that observation, he didn't really have much to say by way of foundation. Oh, I spent four hours out of every day carefully documenting what airport escorts do. There's no evidence like that in the record. It's just simply an anecdotal observation and a self-serving one at that. And it's something that the district court could decide at the summary judgment level as opposed to before a jury, as you just mentioned. Absolutely, absolutely, and I think that's one of the key factors of the summary judgment analysis that shouldn't be lost is that district courts have to make some determination of what a reasonable juror would find, and they do that by considering the nature and quality of the admissible evidence. And when you look at the nature and quality of the admissible evidence in this case, there's just insufficient amounts of it to justify the negative inferences that the plaintiff suggests. They're just almost all based on innuendo or speculation or his theories about why we can't... All right, thank you, counsel, over your time. Okay, thank you, Your Honor. Just briefly in rebuttal, because I know I don't have a lot of time, with respect to the attorney fees, and I didn't get to really mention that much, but, you know, as I stated in my brief, their argument is just to get around the Supreme Court case in Christensen, Garment v. EOC, where the court said the action had to be frivolous and whatnot to get attorney fees. But the statute itself in the Beatty factors says that you have to find the decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith. Here, we didn't proceed to trial on it. We dismissed it prior to the summary judgment. Also, I think a big factor is, with respect to the offer of judgment, it included all the claims. If it only included the State law claims, my client would have accepted that $5,000, but it included all the claims. So, I mean, I think there's a big discrepancy there in it. And then just on a couple of the other arguments, just real quick, you know, with respect to what a jury would do on this alternative job, the airport escort, I mean, one of the main reasons that, you know, if you have a judge deciding a claim on summary judgment on the factual issues, you're going to, in my experience, district court judges lean towards the employer for whatever reason. So I don't think that my client should have factual issues decided by the district court judge. They have their right under the Seventh Amendment to have a jury of their peers decide, and I disagree with him that a jury wouldn't, a jury thinks a lot different than a judge, and I think it would be reasonable that they would conclude that this alternative job was available or that there was other jobs that they could have looked at. Clark County is one of the biggest employers in Nevada. They have 9,500 employees. They have 38 departments. I mean, a jury could very easily conclude that they did not fulfill their obligation. What possible relevance does the size of the county have to whether or not they fulfilled their obligations? The fact that they're looking for alternative job. If it's a big employer, they have a lot of alternative jobs that they could have found them, and they only looked for 30 days. They had two years leading up to the initial, even looking for the job, they could have looked for jobs, and in dark, they indicate even after the person's terminated, you could look for jobs. But again, with respect to the initial termination, I think that alone, there's clearly an issue of fact there. With respect to them having him on leave for a year and still concluding he was not disabled, and that alone would be a basis to deny summary judgment here. So with that, I'll submit. All right. Thank you very much, counsel. Lozama v. Clark County is submitted, and this session of the court is adjourned for today. Thank you very much. Thank you. All rise.
judges: Siler, Wardlaw, M. Smith